Good morning members of the panel. I'm Russell Babcock. I'm from San Diego and I represent Gilbert Flores on appeal. We're here because of two assignments of error. First of all, the no blind mule testimony that was admitted and then what I would characterize in the vernacular as the reverse poverty evidence. Well, first of all, setting the stage for the no blind mule testimony, this is not normal expert kind of opinion. This isn't a medical doctor saying that perhaps an operation is necessary in my opinion. It is now historical fact. Are you attacking Murillo and all the other cases in our jurisdiction that seem to suggest that this is the subject of this kind of testimony? The courts have kind of gone back and forth on this issue. What happens is we've got, you know, the whole line starting with Vallejo going up to Murillo and Sepulveda, but those cases are distinguishable. First off, in Murillo, the court talked a lot about the fact that the defense was going to put on a fingerprint expert in this case and said it was fair comment to allow the prosecution to put on this evidence in light of that. Here the defense was, I didn't know it was in the gas tank. And the response was, are you kidding? I think that's different, Your Honor, in Sepulveda, but us it's... Different, but not very much. It's directly countering a defense and that seems to be the deciding factor in the cases that allow this kind of testimony. Is it relevant that that's the test? Or is it just something that the United States Attorney always throws in to educate the jury, which we said you can't do? Well, the courts have not gone as far as saying that every single case where knowledge is disputed, we're going to let the state judge... No, they said every case is different and you have to look at every case that's fact specific. And that's why I look at this case and I see the defense, pretty obvious. I didn't know it was there. I mean, an expert shows up and says, hey, I can change that. I can do that in 20 seconds. Somebody could have slipped into this car while the poor driver owner wasn't watching and rigged the gas tank. That was the defense, wasn't it? What was the defense? The defense was, I didn't know it was there. Exactly. And so they put on the evidence that said that doesn't happen. There are no such things as blind mules. But there's no case so far that's gone that far to say that I don't know it was there is enough. There's got to be more. I have one now. I mean, it seems to... Mike, first let me ask you a question. Where does this February 2, 2002 memorandum come from? Disclosure Reuse of Advertisements. It comes from the United States Attorney's Office. Which office? For the Southern District of California, the same office that... Does it say on it that it comes from the Southern District Office? I don't know if it does, Your Honor, but it's well known and been disseminated, I'm sure. Was this part of the record in the trial court? No, it was not. It was not, I don't believe. So of what value is it to us now? Well, the value of it is if this court has any questions whether or not blind mules do in fact exist, or whether the government knows... You're asking us to take evidence outside of the record, are you not? I think that in this particular case, if this is well enough known and posted by the U.S. Attorney's Office that the court could... You didn't ask us to take judicial notice of this. I believe I did mention in the brief that the court could take judicial notice of it. I believe it was mentioned. You mentioned it. Yes, I think I did. I didn't make a formal motion. That's my point. That's correct, Your Honor. Because, you know, if you make a motion, then there's a whole process and a procedure, and you've not done that. That's correct, Your Honor. Okay, well, getting back to the basic point and talking about the blind mule testimony, Your Honor's correct that it's done on a case-by-case basis in this jurisdiction. Every case is different. Vallejo's different. Murillo's different. Sepulveda-Varasa's different. And in the most recent case that we have, I believe, which is Sepulveda-Varasa, in that particular case, there was going to be a testimony that blind mules do exist. And then the court said, of course, then it's fair to allow the Congress to come in in this particular case. But there hasn't been a case yet that basically just says that any time a person puts knowledge into dispute, that automatically you can have this kind of evidence come in. I'm having trouble picking up exactly what your objection is. I mean, part of it sounds like you're saying, well, gee, the testimony was wrong. But I'm not sure that's an objection that goes very far on appeal. You're allowed to produce counter-evidence. You're allowed to try to impeach, conduct cross-examination at trial. But the fact that you now think that the testimony wasn't correct, what objection is that for us to pick up? Well, I think that the testimony's not only incorrect, but I think it's absolutely misleading. If the government is aware of the fact that there are cases with blind mules and everything. But what exactly did the agent say? The agent said in this particular case that he'd never seen, I believe, it's in the brief. It's the exact quotation of what he said. Based on all the experience, it doesn't happen is pretty much what it boils down to. Correct. It's a big fight over automatically or never and all the rest. Correct. I read the testimony. And it was no. The answer was no. It doesn't happen. Pretty categorical. It's pretty categorical. 100% no. Unlike the Sepulveda Barraza case where the testimony of agent Bortfeldt was do not normally use. And in that case, too, they used the word rare. They said the testimony was rare. And so now we've got a situation where we've got a government agent up there on the stand and testifying that this never happens, no, categorically no, when we know that, in fact, it does happen. And it's just a historical fact that's wrong. And to allow the government to put on this kind of testimony when they know that, in fact, it's incorrect. That's what we're getting at here. That's the problem. Well, there's no showing that the trial attorney knew that this was incorrect that I could find. As a matter of fact, in one of your footnotes, you say maybe he didn't even know that it was incorrect. He may not have known about this particular memo at that time or these cases, Your Honor. That's correct. But I think at this point, from all the cases that are out there historically, it's not part of the record. Your Honor's correct. I mean, I saw blind mule cases when I was a United States attorney, but that's not in the record. But just on a fundamental level, it's hard to frame this issue and to get to the point. But the point is the government is continuing to put on evidence that the government has reason to know it's false, it's wrong. Blind mules at this point, they may not exist in great numbers. It may be like Sepulveda Barraza. It may be a rare phenomena. But think of the impact that has on a jury. When you have a jury that's listening to this, an ICE agent takes a stand and swears to tell the truth, and flat out says no blind mules. How do we get at the problem in this case? See, the problem in this case, as Judge Clifton said, you're just saying this is wrong, and you bring us stuff that's not on the record. The problem in this case is that there's no situation with a fingerprint, there's no situation where we've got a defense witness in the wing who's going to say that blind mules do exist, but that the court let it end under these circumstances. And there's no case that it's not on the record. Didn't you have opportunities for cross-examination, or perhaps ask for a recess so you could bring in a witness to counterdict it? Part of the problem was that the cross-examination on this subject was curtailed a little bit as well. There was an attempt to make some cross-examination regarding Mr. Levine, who's an expert on blind mules. I think Judge O'Scallion's question was, though, did you attempt to bring in a witness instead of just using cross-examination? The attorney who tried this case, I don't believe, did attempt to bring in a witness, and probably because of the reasons in Sepulveda Barraza, because he knew that if he brought in that witness, then it would invoke the situation where the government would be allowed to do the converse in this particular case. But the attorney who tried this case, Mr. Garrison, no, I do not believe he did. So he didn't bring in a witness because he was hoping to stand on the objection to the agent's testimony being admitted? Potentially. Potentially, I don't know. I can't get, I don't know. The specific grounds for the objection, I think he said 70, what did he say, 704? He said 704, but what specific grounds are you arguing now that this should have been excluded? 704, and also I think 403, it's very, very misleading and prejudicial. Was there a 403 objection made? I don't believe on the record that there was. That's another problem. Yeah, that is a problem. I don't, but it was a 704 objection, I believe, from the record. So 704, what exactly is the objection under 704? We're looking at 704. I think that this is becoming a subject that is no longer really within the kin of expert testimony, unless it's put in issue as it was in Murillo, as it was in the Sepulveda case. 704 is about opinion on an ultimate issue. Correct. In other words, the defendant's guilty because it doesn't happen this way. Because everyone who has. Well, but you know, you're a specialist. You've read all the cases that say this is a profile testimony. It's just talking about how these operations work. And that's standard stuff, and it has been forever. Well, I know the court's bound by the precedent of the other cases, but in a sense, it seems a little bit of a run around the whole situation in terms of the ultimate issue in the case. Because if you allow someone to get up there on the stand and basically say, this is the way it happens every single time, without exception, no, was the answer of Krauss. Completely, 100%. Then what you're basically saying is, then this defendant had to have been guilty, as I put in the brief, the syllogism, the way you would, you know, reason. My takeaway was this guy's not a very good expert, if that's what he thinks. But what I think is irrelevant, based on what the record is. Yes. So I think that, you know, we've got a lot of fuzziness and ambiguity in these cases, because we do look at them on a case-by-case basis. That's what the law is in this jurisdiction. If we look at it on a case-by-case basis here, again, there was nothing that should have triggered the allowing to put on this expert. Because if we hold it in this case, then we say that in every single case, then the government's allowed to put on this testimony. I don't know of a single case where a person will put their knowledge in issue, where the government wouldn't be allowed to do this. Thank you, Counselor. Your time has expired. Okay. We'll hear from the government. Good morning, Your Honors. May it please the Court, Mark Ray for the United States. The District Court did not commit evidentiary error in this case by allowing in this expert testimony. As we point out in our brief, pages 25 and 26, for the last 10-15 years, this Court has repeatedly sanctioned this specific kind of expert testimony. Now, where did this, do you agree that this memo came from your office? Yes, it did. The one that says there are blind mules? Correct, Your Honor. This memo says that blind mules are used, is that right? Oh, the memo came from our office. What it says is, we are aware of very specific cases from January 2011, or I'm sorry, November 2011 to January 2012, where courier brokers have put advertisements in Mexican newspapers soliciting drivers where they don't know. Well, that's a blind mule case. Correct. And at the end, we say... So now your office now knows there are blind mule cases. That is the purpose of that memo. Exactly, Your Honor. Now, you have a case where some expert, who I don't think was, said this doesn't happen. Now, you know, you're an officer of the Court. You and I have a case, the foundation of which rests on bad evidence. Do you have any independent obligation to take some action with respect to this case? I mean, the case is based on an expert testimony that's now, you know, is wrong. I disagree with that, Your Honor. All right, well... This trial, first of all, this happened, this case was about an event in November of 2009. The trial happened in February of 2011. The schemes that are disclosed in that memo that you just showed me were first discovered in January of 2012, in November of 2011, after, long after this trial. And not only that... This isn't the first time that blind mules have been discovered. I mean, if you've done your homework on this case, you know, this problem's been around for a long time. Well, Your Honor, this goes to what this testimony, and I know we talked about where it was brought up earlier. This was the testimony. It said, in your experience, from the hundreds of cases you've done... In the closet in which you've lived with your eyes closed, have you ever seen a pink elephant? No. I mean... Well, do you respect your honor? I am bringing a lot of my own knowledge to this case, which we tend to do, and the idea that there's no such thing as a blind mule is just flat wrong. I mean, I saw them back in the 70s and 80s, when I was a prosecutor. All I can say, Your Honor, this testimony... I've got a document out now saying, hey, guess what? They do exist. They came out just very recently. It had nothing to do with the facts of this case. And by the way, we do oppose that, if you want to call to motion for judicial notice, when those documents were just put into a reply brief for the first time. But coming back to the substance, Your Honor, I don't think it... You know, these allegations are made that we knowingly put on false evidence. Are you still calling witnesses like this in San Diego to say there are no blind mule cases? Not to my knowledge, Your Honor. No, I would hope not. But I would say it would almost be... He's a technology expert. He's looking at facts... That's not the right example. I think it is, Your Honor. I disagree with you. Well, I mean, you cast aspersions on this agent. He's testifying from his experience as of the time of this trial. I'm not casting aspersions on the agent. I'm just saying he's not an expert. He doesn't know what he's talking about. And it would have been fair game for the defense to bring all that to the floor. The cross-examination was cut off, wasn't it? Barely. Excuse me? Barely.  One line of cross-examination, asking this expert, do you know of a certain person, Michael, who is a technology expert? Maybe he did. Maybe... Isn't it fair game to confront experts with the testimony of other experts? Well, that assumes a lot. John Jones, this other expert, says, you don't know what you're talking about. Are you aware of this guy? Well, if a foundation's laid for it, yes. But if a foundation wasn't laid for it, they could have, first of all, called that expert had they wanted to instead. And I think Judge O'Scanlan brought that up. They could have brought in a witness. No.    I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. Well, Judge O'Scanlan brought up the actual evidence. One article, and that was the end of it. He went thoroughly, he impeached this agent. He looked at the survey sample. He said, have you ever talked to people who are acquitted? No. Where do you get most of your information? A lot of it comes from informants or defendants, therefore people with an incentive to want to pray favor with agents and give them false information. He also brought up the fact that shrinkage, which is a loss-of-drug product, is only a can sneak drugs into somebody's car, you don't have to worry about them stealing it from you. He was able to bring up all these lines of impeachment, and then he made a very colorful closing argument to that effect. I went to In-N-Out Burger in Orange County on the way up here yesterday. He said, this agent basically, it's as if he went into In-N-Out Burger and said, who here likes hamburgers, and then went out and proclaimed, well, everybody in the world likes hamburgers. And he said, he didn't go to the Taco Bell across the street. He didn't go to the Greek restaurant.   go to a place like this, if you go to a place like this, if you go to a place like this, When you look at the law, just being cut off on one line of cross-examination doesn't create automatic error. Supreme Court, this court, it said, cross-examination is subject to reasonable limits. Here in this case, it was one line about an author that nobody could establish the agent's agreement. And not only that, I know that my opponent complains, well, he wasn't able to make a record. He's tried in open court to say, Your Honor, right on the heels of that evidence being      I'm going to make a record of it. I'm going to make a record of it. He said, Can I make a record? And the court said, No. But that was in open court. And the rules of evidence say offers of proof are not proper in open court. Did the trial lawyer ever then, at the next break or the next recess, make the appropriate offer of proof? No. So I'm sorry, Your Honor, I know I got a little. I'm just saying, you have an agent here, 20 years of experience, 16 in drugs. He's saying from the hundreds of cases that he's done, he hasn't seen that.    And now, yes, we've heard of a few situations in San Diego. So, no, we're not bringing this that I've heard of. But this evidence that is referred to in that memo came out years after the fact of this case. And not only that, there's never been any representation that the facts of those cases have any similarity here. Have you argued that if this was an error, it's harmless? I don't think so. I know I know. I don't believe I did, Your Honor, because we have Sepulveda, Barasa, Murillo, Castro, Cordoba. All these cases for the last 20 years have squarely upheld this evidence. I think my harmless error argument was more in light of the first issue, which incidentally, I noticed my opponent didn't get to that. I don't know if the court has any questions on the reverse poverty issue. I mean, we believe that we briefed it sufficiently, but again, Your Honor, even at page 20 of the opening brief, my opponent says that the questions asked here track verbatim the questions that were approved in United States versus Murillo. His beef really isn't with the expert. It's with the state of the law of this circuit. But that story decides this. The pre-judge panel is bound by Murillo, and he never even cited Sepulveda, Barasa in the opening brief, even though Sepulveda, Barasa answered several of the attacks that he now makes on this evidence. In fact, I think one of the comments that he made shortly was, oh, Murillo is limited to cases where the government asks were there fingerprints on the drug packages. This is from page 1072 of Sepulveda, Barasa. Murillo, as a noncomplex, oh, I'm sorry, while Sepulveda, Barasa argues that Murillo upheld the admissibility of drug courier modus operandi only because the defendant had argued in his defense of trial that no fingerprints were found on the drug packages, Murillo imposed no such limitation on the scope of its holding. So that argument is gone. I think another basis that my opponent argued was that somehow Murillo turned only on the fact that experts had been noticed on this topic. The way the government reads the case, while that is in fact what happened in Sepulveda, Barasa, that's an alternative holding that isn't mentioned until almost the penultimate sentence of the opinion in Sepulveda, Barasa. In some expert testimony on drug trafficking organizations, and the behavior of unknowing courier is admissible where relevant and probative. Exactly, and in Murillo it said, I think it said it goes right to the heart of a no-knowledge defense. That was the exact defense presented here. Bordfeldt said normally, he didn't say don't. That's correct in Sepulveda, Barasa. I would note, though, another one of those cases, United States v. Castro, 972 F. 2nd at 1111, quote, government experts testified that that amount of cocaine valued in the millions of dollars  was not allowed to be consumed. It goes back and forth between normally, ordinarily, and never. A little bit, but all I'm saying, Your Honor, and I'm going to sit down in 20 seconds, I first think it wasn't an absolute opinion. He said, from your experience in the hundreds of cases you've done, but even if this Court disagrees, it still falls within the testimony that's been upheld elsewhere. It still was fair game for the defense. The defense counsel did a thorough job of impeachment, and that one line that was not allowed about Michael Levine should not cause this Court concern. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Clifton